[Civ. No. 5473.   Fourth Dist.   Sept. 17, 1957.]

MAYME E. WESEMAN, an Incompetent Person, etc., Respondent, v. GEORGE D. LATHAM et al., Appellants.

HERSUM LUMBER COMPANY, INC. (a Corporation), Appellant, v. MAYME WESEMAN, an Incompetent Person, etc., Respondent.

*Assigned by Chairman of Judicial Council.

Ruel Liggett for Appellants.

Sloane & Fisher and Robert W. Conyers for Respondent.

MUSSELL, J.—These two actions were tried together and, by stipulation, the reporter's transcript was to be considered as containing the testimony relative to each action. Findings of fact and conclusions of law were signed and filed in each case and separate judgments were entered.

*Mayme Weseman, etc.* v. *George D. Latham, et al., No. 201143,* is an action for declaratory relief and an accounting. *Hersum Lumber Company, Inc.* v. *Weseman, No. 205868,* originated as an unlawful detainer action in the municipal court but was by court order transferred to the superior court to be tried with the declaratory relief action. In the declaratory relief matter, the trial court canceled and annulled certain contracts and conveyances between Mayme E. Weseman and the defendants and quieted title in plaintiff to the property involved, conditioned upon her deposit in court of the sum of $18,604.50 within 60 days after the decree became

final. In the other action, the court ordered judgment for the defendant and decreed that neither of the parties was entitled to damages against the other. Defendants in action Number 201143 appeal from the judgment therein and plaintiff Hersum Lumber Company, Inc., a corporation, appeals from the judgment in the unlawful detainer action.

In February, 1954, Mayme Weseman owned and was in possession of the real property here involved which consists of a lot in La Jolla, improved with two buildings, the larger of which was divided into apartments for two families and the smaller was a one-family apartment. There were two deeds of trust on the property and the foreclosure sale on one of them was noticed for 10 a.m., February 23, 1954.

Mrs. Weseman had retained an attorney, Mr. Frank Whittemore, who had filed a suit in her behalf to declare the trust deed note usurious and to restrain the pending foreclosure sale. Whittemore obtained an offer of purchase for the property for approximately $28,000 and endeavored to negotiate a settlement of the action. However, Mrs. Weseman did not wish to sell the property and discharged Whittemore as her attorney. She then employed Mr. Philip Crittenden, an attorney and accountant. He discussed the pending suit with Mr. Whittemore and was of the opinion that it probably could not be won. He obtained a restraining order and order to show cause, returnable one half hour before the scheduled foreclosure sale.

Mrs. Weseman was unable to obtain funds to pay the trust deed note and Crittenden arranged a meeting in his office with her and with George D. Latham, a managing director of Hersum Lumber Company, as well as of the American A-1 Investment Company. Crittenden had represented Latham in several matters and knew he had money to lend. Mrs. Weseman asked Latham to lend her the necessary money either to purchase the property at the pending foreclosure sale or to obtain a new trust deed loan and pay off the trust deed that was being foreclosed. Latham declined to make a loan on the property but stated that he would appear at the foreclosure sale and buy in the property in the name of one of his companies, and that he would then give Mrs. Weseman a lease upon the property containing an option to repurchase it from him for a sum equal to what he had to pay at the trustee's sale, plus all expenses involved in the transaction, and a profit to him or his corporation in the sum of $2,000. Latham's offer was accepted and a written contract was pre-

pared and signed by Hersum Lumber Company, Inc., by George D. Latham, vice-president, and by Mayme E. Weseman. This contract embodied the terms of the Latham offer, as stated. Mrs. Weseman executed a deed to the property to Hersum Lumber Company and the lumber company executed a lease to her with an option to repurchase the property. Latham endeavored to buy the trust deeds but the trustee refused to sell and the trustee's sale was held as noticed. Latham purchased the property at the sale for the amount of the deed and had title taken in the name of Hersum Lumber Company, which company paid at the sale a consideration of $18,604.50 for a trustee's deed and also paid an attorney's fee of $500 to Crittenden for his services.

Mrs. Weseman went into possession of the property under her lease option agreement and collected rents from the tenants. From February 22, 1954, until August 22, 1954, she paid Hersum Lumber Company the stipulated rental of $150 per month. She paid no further rental after August 22, 1954, except one payment, and remained in possession of the property. Her option to purchase was not exercised and on February 2, 1955, she was served with a notice to pay rent or quit the premises, and thereafter the action of unlawful detainer herein involved was filed in the municipal court. Hersum Lumber Company obtained a summary writ and immediate possession of the property and thereafter collected the rents.

The record shows that Mrs. Weseman was declared incompetent on June 17, 1955, and that her son, James R. Caldwell, was appointed guardian of her estate. There was substantial evidence that Mrs. Weseman was at the time of the transactions involved incompetent to make her own decisions on the financial management of her own affairs; that this fact was discussed by Whittemore with Mrs. Weseman's son and that Whittemore advised Caldwell that a guardian should be appointed. It also appears that Whittemore had a conference with Crittenden shortly before Crittenden was substituted as attorney for Mrs. Weseman and that he and Whittemore went over everything he (Whittemore) knew on the case. He testified that he had no independent recollection of discussing Mrs. Weseman's competence with Crittenden but that he assumed that he did.

Robert O. Staniforth, an attorney who represented Mrs. Weseman in a will contest case in 1952, testified that he had observed her daily for several weeks and that she was totally

incompetent in the matter of handling her own financial affairs and of knowing her legal obligations to other people.

The trial court found in this connection that at all times mentioned in the complaint and up to the time of trial Mayme E. Weseman was an incompetent person, unable, unassisted properly to take care of her property, but she was not wholly without understanding as defined in sections 38 and 39 of the Civil Code of the State of California; that "Mayme E. Weseman at all times mentioned in the complaint and to the time of trial was not able to perform the obligations imposed upon her by the defendants in the transactions hereinabove set forth and this fact was known to defendants and each of them; that prior to and during all of these transactions between Mayme E. Weseman, defendants had notice of Mayme E. Weseman's incapacity to act in her own behalf and to understand the nature or purpose or effect of any of these transactions."

On May 1, 1954, Hersum Lumber Company and Mayme E. Weseman entered into a written agreement setting forth the computation of the sums to be paid by Mrs. Weseman to repurchase the property. The schedule embodied in said agreement is as follows:

"3/15/54 Purchase of ($6,284.73) 2d T.D.....$ 5,751.78
3/24/54 To Security Title for Expenses on
        transfer of 2d T.D. & foreclosure..   164.93
3/16/54 Pay off on 1st Trust through Security
        Title, Trustee ................... 11,523.46
        Taxes ........................    251.39
        Cash advanced to Mrs. Weseman...    30.00
4/16/54 Cash paid on purchase at foreclosure
        sale on 2d T. D. .......$11,573.46
        Less: Refund received.. 10,690.52

                              882.94
        Fee to Philip Crittenden..........   500.00
        Profit to Hersum Lumber Co., Inc... 2,000.00

                           $21,104.50
        Interest on disbursements to May 1,
        1954 ..........................   132.81

        Amount as of May 1, 1954........$21,237.31."

The trial court ordered title quieted in Mrs. Weseman conditioned upon her deposit in court of the sum of $18,604.50 but did not require her to deposit the last three items of the

above schedule, to wit, the sum of $500 paid to Crittenden, interest of $132.81, and the further sum of $2,000 claimed by Latham as his profit from the transaction.

■ Appellants state in their brief that the question at issue on this appeal is whether the defendants are entitled to recover the three items disallowed by the court. They concede that the court could find, at least by implication, that the disbursements and expenses paid out by defendants after May 1, 1954, when they took over the property, were compensated sufficiently by the rentals collected. The evidence was conflicting as to the rental value of the property and items of expense and the trial court's findings in this connection are supported by the record. We find no reversible error in the court's failure to allow Latham to collect the $500 paid to Crittenden, under the circumstances shown by the record. Crittenden knew or should have known of Mrs. Weseman's incompetency after discussing her case with Whittemore and that any contract or deed made by her would be subject to possible cancellation or annulment. The services rendered by Crittenden were of doubtful benefit to Mrs. Weseman. No prejudicial error resulted from the trial court's failure to allow Latham $2,000 claimed by him as profit in the transaction since the contract providing for the payment of this sum was cancelled and annulled and defendants were required to convey the property back to Mrs. Weseman.

Appellants state in their brief that they "are not bewailing the requirement that they must now convey the property back to Mrs. Weseman. They offered before and during the trial to do that."

■ The contracts and conveyances executed by Mrs. Weseman were subject to rescission under the provisions of section 39 of the Civil Code, since there was substantial evidence of her incompetency. As is said in *Neale* v. *Sterling*, 117 Cal. App. 507, 509 [4 P.2d 250]: "That section confers upon an incompetent person the right to rescind a voidable contract made before a judicial determination of incompetency but while such person was in fact incompetent. That right is entirely predicated upon incompetency at the time the contract was made and is not dependent upon knowledge of the incompetency or fraud on the part of the other party."

■ While it was necessary that defendants be restored to the consideration with which they parted in the transactions

(*Burgess* v. *Security-First Nat. Bank,* 44 Cal.App.2d 808, 821 [113 P.2d 298]), it was held in *Lawrence* v. *Ducommun,* 14 Cal.App.2d 396, 400 [58 P.2d 407]:

" 'There are exceptional cases where restoration or an offer to restore before suit brought is not necessary—as, for instance, where the thing received by the plaintiff is of no value whatever to either of the parties; or where the plaintiff has merely received the individual promissory note of the defendant; or where the contract is absolutely void, or where it clearly appears that the defendant could not possibly have been injuriously affected by a failure to restore; or where, without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties— . . .' "

In the instant case it appears that the rights of the parties were sufficiently and properly protected by the decree.

Judgments affirmed.

Griffin, Acting P. J., concurred.